## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| RICHARD J. SINGLETON | § | |
| | § | *Jury Trial Demanded* |
| Plaintiff, | § | |
| | § | Civil Action File |
| vs. | § | |
| | § | No. _____ |
| | § | |
| NORFOLK SOUTHERN RAILWAY | § | |
| COMPANY, NORFOLK SOUTHERN | § | |
| CORPORATION, CORTEZ MASON, | § | |
| JONATHAN HENSON, and | § | |
| STEVE MOOSE, | § | |
| | § | |
| Defendants. | § | |

---

## COMPLAINT

---

Plaintiff, Richard J. Singleton, by and through counsel, states his claims against Defendants, Norfolk Southern Railway Company, Norfolk Southern Corporation, NS Senior General Foreman, Cortez Mason, NS Senior General Foreman Steve Moose, and NS General Foreman, Jonathan Henson alleging as follows:

### **Parties, Jurisdiction & Venue**

1. Plaintiff is a citizen of Houston County, Georgia.

2. Defendant Norfolk Southern Railway Company ("NS") is a corporation organized under the laws of the State of Virginia with a principal place of business in the State of Virginia.

3.  NS has its Georgia headquarters in Atlanta, Fulton County, Georgia.

4.  NS's registered agent for service is J. Steven Stewart, 477 Mulberry Street, 1500, Macon, Georgia 31201.

5.  Defendant Norfolk Southern Corporation ("NSC") is a corporation organized under the laws of the State of Virginia.

6.  Defendant NSC has its Georgia headquarters in Atlanta, Fulton County, Georgia and, upon information and belief, its overall principal place of business in Atlanta, Fulton County, Georgia.

7.  Defendant NSC's registered agent for service is J. Steven Stewart, 477 Mulberry Street, 1500, Macon, Georgia 31201.

8.  Defendant, NS Senior General Foreman, Cortez Mason ("Mason"), is, on information and belief, an NSC employee, who was, at all times material to this action, one of Plaintiff's supervisors.

9.  Defendant, NS Senior General Foreman, Steve Moose ("Moose"), was, at all times material to this action, one of Plaintiff's supervisors.

10. Defendant, NS General Foreman Jonathan Henson ("Henson"), is, on information and belief, an NSC employee, and was, at all times material to this action, one of Plaintiff's supervisors.

11. This court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Count One is authorized to be filed in U.S. District Court

by the Federal Employers' Liability Act, 45 U.S.C. § 56 ("FELA") and Count

Two is authorized to be filed in U.S. District Court by the Federal Rail Safety

Act, 49 U.S.C. § 20109(d)(3) ("FRSA").

12. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(2)

and 45 U.S.C. § 56 because a substantial part of the events or omissions giving

rise to the claim occurred in this district and division.

13. Venue is also proper in this district and division pursuant to 28 U.S.C. §

1391(b)(1), (c)(2),(d) and 45 U.S.C. § 56 because NS resides and/or does

business in this district and division.

### Facts

14. NS and NSC are common carriers by railroad and conduct shipping by rail in

interstate commerce. NS and NSC are qualified to do business in Georgia, do a

substantial amount of business in Georgia, and maintain offices in Columbus,

Georgia.

15. NSC is the parent company of NS and, on information and belief, was, at all

times material to this action, the employer of Cortez, Moose and Henson.

16. On information and belief NSC operates NS and other railroads.

17. At all times material to this action, Plaintiff was employed by NS/NSC as a

railroad carman.

18. A substantial part of Plaintiff's duties for NS/NSC affected interstate commerce.

3

19. On July 28, 2016, Plaintiff was working, in the course and scope of his employment on July 28, 2016, with Defendants NS/NSC when he was injured while working on a discharge door on a freight car at a local industry.

20. Plaintiff reported the accident and injury to Mason and NS/NSC management as required.

21. Plaintiff's injury and his report of injury each qualified as a protected activity within the meaning of FRSA, 49 U.S.C. § 20109.

22. Following his injury, Plaintiff treated in the emergency room for his left shoulder injury and referred to an orthopedic doctor.

23. Plaintiff's orthopedic physician ordered physical therapy, which NS/NSC failed to approve, thereby denying Plaintiff medical treatment.

24. Mason, and thus NS/NSC, following Plaintiff's July 28, 2016, injury and accident report, verbally threatened to abolish Plaintiff's job. This was as adverse act within the meaning of FRSA.

25. This threat was a result, in whole or in part, of Plaintiff reporting his on-the-job injury and was thus an illegal, adverse act within the meaning of FRSA.

26. Mason and NS/NSC abolished Plaintiff's job on August 9, 2016.

27. The abolition of this job was an adverse act which was taken as illegal retaliation against Plaintiff for reporting his on-the-job injury and is a violation of FRSA whistleblower statute.

28. The abolition of this job was a result, in whole or in part, of Plaintiff reporting his on-the-job injury and was thus an illegal, adverse act within the meaning of FRSA.

29. Plaintiff underwent left shoulder surgery on November 15, 2016.

30. On January 13, 2017, pursuant to FRSA and the U.S. Department of Labor's implementing regulations set forth at 29 C.F.R. Part 1982, Plaintiff made a complaint with the regional director of the Occupational Safety & Health Administration ("OSHA") in Atlanta, Georgia. The regional director assigned the case number 4-5070-17-082.

31. On January 29, 2018, Plaintiff was working as a car inspector at Brosnan Yard, Macon, Georgia.

32. While working on January 28, 2019, GF Henson confronted Plaintiff about bad ordering freight cars, demanding to know why Plaintiff was "looking that close" at outbound cars during inspections.

33. Further, Henson told Plaintiff his job was to inspect cars only for "hump damage" and do brake tests.

34. Plaintiff disagreed with GF Henson and told him he was supposed to inspect the cars to FRA standards and that he would continue to inspect in accordance with FRA standards.

35. Plaintiff's response to Henson's demands and Plaintiff's insistence on complying with FRA standards constituted a lawful refusal to violate federal safety laws and was a FRSA protected activity.

36. Henson's actions on January 28, 2019 were attempts to coerce Plaintiff into not performing his duties as required by federal safety laws and NS procedures.

37.  Henson's conduct on January 28, 2019, attributable to NS/NSC pursuant to the doctrine of respondeat superior, violated the FRSA.

38. On February 27, 2018, Plaintiff was inspecting an outbound train on forwarding track 2, Brosnan Yard.

39. While doing so he found an FRA defect on one of the couplers on hopper car PRSX 1080 and put a bad order tag on the defective car requiring the defective car to be pulled from the train and sent to the repair shop or repaired in place.

40. Defendants' policies and procedures required car inspectors to call a supervisor if they were going to "bad order" a car.

41. In accordance with those policies/procedures, Plaintiff called a supervisor regarding the hopper car he had removed from service.

42. After reporting the bad order car, Henson came to the scene.

43. At the scene, Henson argued with Plaintiff regarding the defect, demanding that Plaintiff remove the bad order tag and allow the car to remain in service, threatening to fire Plaintiff should he (Plaintiff) refuse to do so.

44. Henson's acts and threats, attributable to Defendants NS/NSC pursuant to the doctrine of respondeat superior, amounted to retaliation and intimidation within the meaning of FRSA and, thus, violated the FRSA.

45. Shortly after the February 27, 2018 Brosnan Yard incident, Henson radioed Plaintiff ordering him to meet him at the car Plaintiff had removed from service. There, Henson continued to threaten Plaintiff with rule violations and discipline. Hanson's threats, attributable to Defendants NS/NSC pursuant to the doctrine of respondeat superior, were threats and intimidation, acts the FRSA prohibits.

46. In order to avoid discipline and termination, Plaintiff complied with Henson's demands and removed the tag.  An FRA inspector found this same car later and verified the defect

47. Henson, and thus NS/NSC, later told other NS/NSC employees that he was going to "break" employees, including Plaintiff, from placing bad order tags on defective cars.

48. Henson's threats and actions, attributable to Defendants NS/NSC pursuant to the doctrine of respondeat superior, were illegal, adverse acts meant to intimidate

and retaliate against Plaintiff and other car inspectors into not properly performing their jobs in violation of FRSA.

49. Henson's and Defendants' acts, as alleged, were due, in whole or in part, to Plaintiff having engaged in the protected activities set forth above.

50. On March 10, 2018, Defendant Moose charged Plaintiff with a rule violation, alleging that Plaintiff failed to discover and tag a broken ladder tread on rail car SOU 105140.

51. SOU 105140 was in a train, a part of which Plaintiff had inspected, or "worked", on March 7, 2018.

52. The SOU 105140 defect was found by the FRA some 30(+) hours after Plaintiff had inspected the train in which SOU 105140 was part. Plaintiff had had no contact, in any way, with SOU 105140 for at least thirty (30) hours.

53.  SOU 105140 was only 1 of 18 cars that the FRA bad ordered day and the only car of the 18 that Plaintiff had inspected.

54. Plaintiff was the only car inspector who Defendants disciplined and Defendants did not discipline any of the other carmen who had inspected the other 17 defective cars.

55. Based upon the SOU 105140 defect, Defendant Moose instituted a discipline process against Plaintiff that Defendants classify as "Start-Serious."

56. While Plaintiff did not think he had done anything wrong regarding SOU 105140, he had no choice but to accept the Start-Serious level or NS/NSC would initiate a formal disciplinary charge and investigation, which could result in termination.

57. This discipline and discipline process were illegal adverse actions by Moose and NS/NSC within the meaning of FRSA, and where due, in whole or in part, to Singleton's having engaged in all the protected activities set forth above.

58. NS and GF Henson committed further violations of the FRSA whistleblower law beginning on April 10, 2018.

59. Plaintiff had worked a cut of cars in Brosnan Yard forwarding yard track 3 and found what he believed to be a cracked coupler on tank car PROX 76826. He bad ordered PROX 76826 and called it into the tower, as required.

60. Plaintiff continued his work until he Defendant Henson demanded that Plaintiff return to PROX 76826.

61. Plaintiff met Defendant Henson at PROX 76826 and Henson asked Plaintiff why he thought the coupler had a defect.

62. Defendant Henson harassed, intimidated Plaintiff. Defendant Henson berated Plaintiff and accused Plaintiff of going "rogue" and "randomly bad ordering cars".

63. Defendant Henson ordered Plaintiff to remove the bad order tag, but Plaintiff told Henson he thought it was a defective coupler and would not remove it.

64. Plaintiff's report of the bad order coupler on PROX 76826 was a report of a safety condition and a report of an FRA freight car safety standard and thus was a protected activity within the meaning of FRSA.

65. Plaintiff's refusal to pull the bad order tag on PROX 76826 was a refusal to violate a federal law and thus a protected activity.

66. Defendant Henson's harassment and intimidation, attributable to Defendants NS/NSC, were adverse actions within the meaning of FRSA and, thus, violated the FRSA.

67. Defendants' violations of the FRSA, through threats and intimidation, as set forth above, were a result, in whole or in part, of Plaintiff having engaged in the protective activities of that day and the other protected activities.

68. On April 14, 2018, Defendants ordered Plaintiff to Defendant Moose's office where NS/NSC where Defendant Moose presented Plaintiff with a discipline letter.

69. Defendants' actions of April 14, 2018, in disciplining Plaintiff was an adverse action by Defendants in violation of the FRSA.

70. Defendants' actions of April 14, 2018 resulted, in whole or in part, from Plaintiff's protected activities.

71. On June 20, 2018, Plaintiff filed supplemental charges to his January 13, 2017, OSHA complaint (4-5070-17-082) by emailing the OSHA investigator assigned to the case.

72. The Secretary of Labor had not issued a final decision within 210 days following the filing of Plaintiff's complaint(s).

73. As of the date of the filing of this complaint, the Secretary of Labor had still not issued a final decision. None of the delay is attributable to Plaintiff.

## Count One: Federal Employers' Liability Act (45 U.S.C. § 51, et seq.)

74. Plaintiff adopts all factual allegations stated above as if they were fully stated herein.

75. As a result of the incident of July 28, 2016, as described, Plaintiff has been caused to lose wages and benefits from his employment from that date until the present and will continue to lose such wages and benefits in the future.

76. Plaintiff has also been caused to suffer great physical pain, discomfort and mental anguish and he will be caused to suffer pain, discomfort and mental anguish in the future.

77. Plaintiff also has suffered a permanent impairment in his ability to work and earn money in the future.

78. Plaintiff has been caused to undergo serious and painful medical care and treatment, including surgery, and to incur expense therefore.

79. Plaintiff avers that he was caused to sustain and suffer all of the aforesaid injuries and damages as a result, in whole or in part, of (1) the negligence of the officers, agents or employees of NS/NSC while acting in the line and scope of employment as aforesaid, (2) a defect or insufficiency due to the negligence of NS/NSC in its engines, cars, appliances, machinery, roadbed, works or other equipment as aforesaid, and/or (3) the negligent failure of NS/NSC to provide Plaintiff with a reasonably safe place to work and with reasonably safe and suitable tools and equipment as aforesaid.

WHERFORE, Premises Considered, Plaintiff respectfully requests:

    a.  judgment in his favor and against defendants;

    b.  compensatory damages for any and all damages he sustained as a result of the wrongful conduct in an amount determined by the jury;

    c.  all costs of litigation; and

    d.  any and all relief necessary to make him whole.

### Count Two: Retaliation Claims (49 U.S.C. § 20109(a))

80. Plaintiff adopts all factual allegations stated above as if they were fully stated herein.

81. NS/NSC and their officers, and/or their employees retaliated against Plaintiff as aforesaid. Said retaliation was due, in whole or in part, to Plaintiff's lawful, good

faith acts in making a complaint applicable to railroad safety and notifying NS/NSC of work-related personal injury.

82. NS/NSC knew or suspected that Plaintiff was engaged in protected activity and that the protected activity was a contributing factor of NS's/NSC's adverse actions.

83. Plaintiff has lost wages and benefits. Plaintiff has also suffered from emotional distress, worry, fear, and humiliation because of the wrongful conduct.

WHEREFORE, Premises Considered, Plaintiff respectfully requests:

a. trial by jury;

b. judgment in his favor and against the defendants;

c. compensatory damages for any and all damages he sustained as a result of the wrongful conduct in an amount determined by the jury;

d. punitive damages in an amount determined by the jury (but not to exceed $250,000.00);

e. litigation costs, expert witness fees, and reasonable attorney fees in the prosecution of this action; and

f. any and all relief necessary to make him whole.

**Hall & Lampros, LLP**

By: __/S/ Andrew Lampros__
Andrew Lampros

13

                                        Ga. Bar #432328

400 Galleria Pkwy
Suite 1150
Atlanta, GA 30339
404/876-8100
alampros@hallandlampros.com


Attorneys for Plaintiff